**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Charles Morse, Jr.

   v.

Carolyn Colvin, Acting
Commissioner, Social
Security Administration

Civil No. 14-cv-18-LM
Opinion No. 2015 DNH 055


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Charles Morse moves to
reverse the Acting Commissioner's decision to deny his
application for Social Security disability insurance benefits,
or DIB, under Title II of the Social Security Act, 42 U.S.C. §
423, and for supplemental security income, or SSI, under Title
XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves
for an order affirming her decision.  For the reasons that
follow, this matter is remanded to the Acting Commissioner for
further proceedings consistent with this order.

**Standard of Review**

The applicable standard of review in this case provides, in
pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of

>the Commissioner of Social Security as to any fact, if
>supported by substantial evidence, shall be conclusive
>. . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Acting Commissioner] has committed a legal

or factual error in evaluating a particular claim.'" Manso-

Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting

Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

    As for the statutory requirement that the Acting

Commissioner's findings of fact be supported by substantial

evidence, "[t]he substantial evidence test applies not only to

findings of basic evidentiary facts, but also to inferences and

conclusions drawn from such facts." Alexandrou v. Sullivan, 764

F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,

360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial

evidence is 'more than [a] mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d

594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402

U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the

[Acting Commissioner] to determine issues of credibility and to

2

draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir 1991) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988). Finally, when determining whether a decision of the [Acting] Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

### Background

The parties have submitted a Joint Statement of Material Facts (document no. 19).  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Over the years, Morse has received extensive medical treatment, resulting in diagnoses of both physical and mental conditions.  Physically, he has been diagnosed with, among other things, degenerative disc disease of the lumbar spine,

uncontrolled diabetes mellitus, and "[s]evere complex sleep disordered breathing [i.e., sleep apnea] in the setting of morbid obesity," Administrative Transcript ("Tr.") 651. Mentally, he has been diagnosed with major depression and panic disorder.  In a disability report completed in conjunction with his application for social security benefits, Morse identified his impairments as: "Bipolar [disorder], mental health issues, [posttraumatic stress disorder], low back pain, breathing problems, obesity, [gastroesophageal reflux disease], gout, sleep apnea, diabetes, learning disability, memory loss, herniated disc, and degenerative disc [disease]."  Tr. 378.

With regard to the interplay between Morse's various conditions, the record includes the diagnosis quoted above, which links Morse's obesity with his sleep apnea.  In addition, Dr. Lawrence Jasper, a consulting psychologist, wrote a "Comprehensive Psych Profile – Adult" that includes the following relevant passage:

> He reports that he will go to bed at 8:00 or 9:00 p.m.
>
> . . . .
>
> Asked about the reasons [why] he cannot get to sleep until 3:00 in the morning even though he goes to bed at 8:00 or 9:00 he reports that he is awake because "I'm afraid to go to sleep because I'm afraid I'm going to stop breathing in my sleep."  Despite this report of a high degree of fear he reports that he

will not wear a face mask designed to alleviate sleep
apnea because it dries up his mouth excessively.

Tr. 791.[1]

Morse applied for DIB and SSI in May 2009.  His claim
worked its way through the administrative process, which
concluded with an unfavorable decision from an administrative
law judge ("ALJ").  See Tr. 99-107.

Thereafter, the Decision Review Board ("DRB") remanded
Morse's claim to the ALJ with a set of instructions including
the following: "Further evaluate the nature and severity of all
of the claimant's impairments at step 2 of the sequential
evaluation process and beyond."[2]  Tr. 116 (emphasis added).

On remand, the ALJ conducted a second hearing.  After that
hearing, the ALJ issued a decision that includes the following
relevant findings of fact and conclusions of law:

> 3.  The claimant has the following severe impairments:
> degenerative disc disease of the lumbar spine, obesity
> and diabetes mellitus, uncontrolled (20 CFR
> 404.1520(c) and 416.920(c)).
>
> . . . .

---

[1] At his hearing, Morse testified that he was then using a
breathing machine at night, but also testified that it did not
help him much with respect to sleepiness during the day.  See
Tr. 44.

[2] The sequential evaluation process to which the DRB remand
order refers is described in the section that follows.

4.   The claimant does not have an impairment or
combination impairments that meets or medically equals
the severity of one of the listed impairments in 20
CFR Part 404, Subpart P, Appendix 1 (20 CFR
404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
and 416.926).

.  .  .  .

5.   After careful consideration of the entire record,
I find that the claimant has the residual functional
capacity to perform sedentary work as defined in 20
CFR 404.1567(a) and 416.967(a) except he can lift ten
pounds frequently and can stand or walk for two hours
in an eight-hour workday and sit for six hours in an
eight-hour workday.  The claimant has unlimited use of
the feet and hands to operate controls and to push and
pull.  He requires the opportunity to change positions
as need[ed] to alleviate discomfort and pain, which
may include brief standing or walking.  He can
occasionally, balance, stoop, kneel[,] crouch, crawl
and climb ramps and stairs, but must never climb
ladders, ropes and scaffolds.  He must avoid exposure
to extreme temperatures, vibrations and hazards.  He
should avoid concentrated exposure to humidity and
respiratory irritants.

Tr. 21, 24.  Based upon his assessment of Morse's residual

functional capacity,[3] and in reliance upon testimony from a

vocational expert ["VE"] at Morse's first hearing,[4] the ALJ

---

[3] "Residual functional capacity," or "RFC," is a term of art
that means "the most [a claimant] can still do despite [his]
limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

[4] Given the analysis and disposition that follows, the
court need not address the matter of the ALJ's reliance upon VE
testimony from Morse's first hearing when issuing a decision
after his second hearing.

determined that Morse was able to perform the job of charge-
account clerk.[5]

**Discussion**

According to Morse, the ALJ's decision should be reversed,
and the case remanded, because the ALJ did not: (1) properly
consider his major depressive disorder, panic disorder, and
sleep apnea; (2) properly weigh the expert opinions in the
record; or (3) carry his burden of establishing that there are
jobs that exist in significant numbers in the national economy
that Morse can perform despite his impairments.  Morse's first
argument is persuasive and dispositive.

A. The Legal Framework

To be eligible for disability insurance benefits, a person
must: (1) be insured for such benefits; (2) not have reached
retirement age; (3) have filed an application; and (4) be under
a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible
for supplemental security income, a person must be aged, blind,
or disabled, and must meet certain requirements pertaining to
income and assets.  42 U.S.C. § 1382(a).  The question in this
case is whether Morse was under a disability.

---

[5] That job was the only job the VE was able to identify that
could be performed by a person with the RFC included in the
ALJ's hypothetical question to the VE.  See Tr. 89.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits).  Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also 42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for determining eligibility for SSI benefits).

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is

denied; 2) if the [claimant] does not have, or has not
had within the relevant time period, a severe
impairment or combination of impairments, the
application is denied; 3) if the impairment meets the
conditions for one of the "listed" impairments in the
Social Security regulations, then the application is
granted; 4) if the [claimant's] "residual functional
capacity" is such that he or she can still perform
past relevant work, then the application is denied; 5)
if the [claimant], given his or her residual
functional capacity, education, work experience, and
age, is unable to do any other work, the application
is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).

The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Acting
> Commissioner] considers objective and subjective
> factors, including: (1) objective medical facts; (2)
> [claimant]'s subjective claims of pain and disability
> as supported by the testimony of the [claimant] or
> other witness; and (3) the [claimant]'s educational
> background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

B. Morse's Argument

Morse makes a series of interconnected arguments concerning the manner in which the ALJ handled three of his impairments, i.e., major depressive disorder, panic disorder, and sleep apnea.  Specifically, he argues that the ALJ erred at step two of the sequential evaluation process by finding that none of those three impairments was severe, and also erred at the RFC stage by: (1) failing to expressly mention any of those impairments in his RFC discussion; (2) failing to consider the combined effects of all of his impairments; (3) failing to evaluate the credibility of statements he made about the effects of his mental impairments and his sleep apnea; and (4) fashioning an RFC that does not include any mental limitations flowing from his mental impairments and his sleep apnea.  Morse is entitled to a remand because the ALJ did not adequately consider the combined effects of all of Morse's impairments.

Morse frames his argument on that point in the following way:

> Morse has co-occurring physical and mental impairments with overlapping symptoms which affect mental work abilities.  Morse's uncontrolled diabetes, morbid obesity, severe sleep apnea, depression and anxiety are co-existing conditions in his case.  These co-existing impairments affect mental work abilities, and when combined, the limiting effects are greater than when considered individually.

10

Clm't's Mem. of Law (doc. no. 14-1) 11 (emphasis in the
original).  Based upon that argument, Morse goes on to describe
the manner in which his physical impairments, i.e., diabetes,
obesity, and sleep apnea can affect the mental functioning of a
person suffering from them.

      Morse's argument is based upon the following provision
drawn from the relevant regulations:

> In determining whether your physical or mental
> impairment or impairments are of a sufficient medical
> severity that such impairment or impairments could be
> the basis of eligibility under the law, we will
> consider the combined effect of all of your
> impairments without regard to whether any such
> impairment, if considered separately, would be of
> sufficient severity.  If we do find a medically severe
> combination of impairments, the combined impact of the
> impairments will be considered throughout the
> disability determination process.

20 C.F.R. §§ 404.1523 & 416.923; see also 42 U.S.C. §
423(d)(2)(B).  Morse, however, identifies no case law explaining
how, precisely, an ALJ is supposed to demonstrate his or her
compliance with that provision.  Neither does the Acting
Commissioner identify such a standard.  Rather, she relies upon
the principles articulated in Coppola v. Colvin, that an ALJ:
(1) need not "expressly address each of a claimant's diagnoses,"
No. 12-cv-492-JL, 2014 WL 677138, at *2 (D.N.H. Feb. 21, 2014)
(emphasis in the original); and (2) is only required "to
consider 'the limiting effects of all of the claimant's

impairments,' both severe and non-severe," id. (citation omitted, emphasis added by Coppola).

The court of appeals for this circuit has yet to set a standard for how an ALJ is to carry out his or her responsibilities under 20 C.F.R. §§ 404.1523 & 416.923. However, a panel of the Fifth Circuit has recently explained that "an ALJ must 'adequately explain his or her evaluation of the combined effects of [a claimant's] impairments.'" Tanner v. Comm'r of Soc. Sec., --- F. App'x ---, ---, No. 14-1271, 2015 WL 574222, at *4 (4th Cir. Feb. 12, 2015) (per curiam) (emphasis added) (quoting Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014); citing Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)).

According to the Tanner court, the ALJ in that case provided an adequate explanation by: (1) describing the claimant's non-severe impairments; (2) stating "that her obesity 'combined with her musculoskeletal impairments does not result in impairments that meet or equal listing severity,"[6] id. at *4 (quoting the record, emphasis omitted); (3) described the claimant's severe impairments; and (4) "concluded that, '[t]he

---

[6] It is not clear from the opinion whether the claimant's obesity or her musculoskeletal impairments were severe or non-severe impairments.

claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments,'" id.  In other words, the Tanner court appears to have held that it was sufficient for the ALJ merely to proclaim that the claimant did not have a combination of impairments that met or equaled the severity of a listed impairment without describing the analysis that led him to that conclusion.

In Tuggerson-Brown v. Commissioner of Social Security, a panel of the Eleventh Circuit provided the following analysis of a claim that an ALJ failed to consider all of the claimant's impairments in combination:

> While the ALJ did not need to determine whether every alleged impairment was "severe," he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation.  Despite Tuggerson-Brown's arguments to the contrary, it is apparent from the face of the ALJ's decision and the RFC report relied upon by the ALJ that the ALJ did, in fact, consider all medical evidence in combination in concluding that Tuggerson-Brown was not disabled.  In performing his analysis, the ALJ stated that he evaluated whether Tuggerson-Brown had an "impairment or combination of impairments" that met a listing and that he considered "all symptoms" in determining her RFC.  Under our precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence.  See Wilson [v. Barnhart], 284 F.3d [1219,] 1224-25 [(11th Cir. 2002)].

572 F. App'x 949, 951-52 (11th Cir. 2014).

Under the ALJ-friendly standard set out in Tanner and Tuggerson-Brown, the decision by the ALJ in this case might possibly be sufficient to satisfy the requirement imposed by 20 C.F.R. §§ 404.1523 & 416.923.  In the section of his decision in which he outlined the relevant law, the ALJ acknowledged that when assessing Morse's RFC, he was obligated to "consider all of the claimant's impairments, including impairments that are not severe." Tr. 20.  At step three, the ALJ found that Morse did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," Tr. 24.  However, in the discussion that followed that finding, the ALJ mentioned only Morse's three severe impairments.  See Tr. 24.  At the end of his discussion of Morse's RFC, the ALJ wrote:

> Notably, claimant's obesity has been considered in conjunction with the claimant's other severe impairments in assessing the claimant's residual functional capacity.  I find that the records do not indicate that his obesity limits his ability to function further than the exertional capacity noted above.
>
> Based upon the totality of the evidence, I find the claimant's impairments, in combination, comport with the residual functional capacity [stated] above.

Tr. 27.  However, those conclusions follow a discussion in which the ALJ did not even mention Morse's non-severe impairments, and in the first of the two paragraphs quoted above, the ALJ

14

considered a combination that consisted only of Morse's three severe impairments.

Beyond that, the ALJ evaluated several expert opinions that mentioned Morse's non-severe impairments, which could be taken to show that the ALJ did consider those impairments in combination with Morse's other impairments.  See Tuggerson-Brown, 572 F. App'x at 951.  Specifically, the ALJ evaluated: (1) Dr. Hugh Fairley's "Physical Residual Functional Capacity Assessment," in which he acknowledged Morse's allegations that he suffered from bipolar disorder, posttraumatic stress disorder, obesity, sleep apnea, and diabetes, see Tr. 26, 841; (2) Dr. Riccio's "Physician/Clinician Statement of Capabilities," in which he acknowledged Morse's diagnoses of morbid obesity, moderate-severe back pain, lumbar disc disease, diabetes, and depression, see Tr. 26-27, 904; (3) Dr. Lawrence Jasper's "Comprehensive Psych Profile – Adult," in which he acknowledged Morse's diagnoses of dysthymic disorder[7] and probable generalized anxiety disorder and his reports of obesity, hypertension, high cholesterol, gastroesophageal reflux disease, type II diabetes and sleep apnea, see Tr. 23, 788, 793;

---

[7] Dysthymia is "[a] chronic mood disorder manifested by depression for most of the day, more days than not . . . ." Stedman's Medical Dictionary 602 (28th ed. 2006).

and (4) Dr. Dennis Becotte's "Comprehensive Psych Profile –
Adult," in which he acknowledged Morse's diagnoses of depressive
disorder, herniated discs, degenerative disc disease, diabetes,
high blood pressure, and asthma, see Tr. 23, 831.  While these
expert opinions identified co-occurring impairments, none of
them includes any analysis or discussion of the limiting effects
of those impairments in combination with each other.

Turning from the law of the Fifth and Eleventh Circuits to
law developed in this circuit, several decisions from judges in
this district appear to employ a standard for applying §§
404.1523 & 416.923 that is more faithful to the "adequate-
explanation" requirement stated in Tanner than the standard
actually used in Tanner and Tuggerson-Brown.  For example, in
Forni v. Barnhart, Judge Barbadoro reversed the ALJ's decision
and remanded "for consideration of whether, in light of Forni's
combined mental and physical impairments, his RFC would allow
him to perform jobs that exist in significant numbers in the
economy," No. 05-cv-406-PB, 2006 WL 2956293, at *9 (D.N.H. Oct.
17, 2006).  Judge Barbadoro explained his ruling that the ALJ
failed to consider the combined effect of all the claimant's
impairments this way:

> [I]n assessing a claimant's ability to work, the ALJ
> should not disregard individual, non-severe

16

impairments where the claimant's collective
impairments are severe.

Here, the ALJ did just that. Upon reviewing each
impairment individually, he determined that Forni's
mental impairment was not severe but that his asthma
and carpal tunnel syndrome were severe. He then
completely (and improperly) dropped Forni's depression
from his analysis, thereafter analysing only the
effects of asthma and carpal tunnel on Forni's RFC.
See Loza v. Apfel, 219 F.3d 378, 392-93 (5th Cir.
2000) (remanding for reconsideration where ALJ erred
by only evaluating consequences of claimant's mental
and physical impairments individually and by not
considering their combined effects); Dunn v. Apfel,
No. 98-591-B, 1999 WL 1327399, at *8 (D.N.H. Dec. 10,
1999) (finding improper analysis at severity stage may
have caused failure to properly consider the total
limiting effects of claimant's mental and physical
impairments when determining her RFC); MacLean v.
Sec'y of Health & Human Servs., No. 93-384-SD, 1994 WL
328792, at *2 (D.N.H. July 7, 1994) (remanding in part
to determine whether claimant had more than one
impairment, and if so, to consider combination of all
impairments at each step of disability evaluation
process); Edmond v. Sec'y of Health & Human Servs.,
No. 88-360-D, 1989 WL 281943, at *5 (D.N.H. Mar. 15,
1989) ("ALJ failed to properly consider whether the
combination of plaintiff's impairments rendered him
disabled").

Because [t]he ALJ failed to analyse Forni's
impairments in combination throughout the sequential
analysis, I find that his decision was not supported
by substantial evidence.

Forni, 2006 WL 2956293, at *8-9; see also Stephenson v. Halter,

No. CIV. 00-391-M, 2001 WL 951580, at *2 (D.N.H. Aug. 20, 2001)

(ruling that ALJ does not meet requirement of 20 C.F.R. § 1523

merely by finding that impairment is not severe either alone or

in combination with other impairments, but must actually address

non-severe impairment when assessing RFC).  Under the standard employed in Forni and Stephenson, the decision by the ALJ in this case falls short of satisfying the requirement imposed by 20 C.F.R. §§ 404.1523 & 416.923.

Like the ALJ in Forni, the ALJ in this case discussed Morse's impairments individually at step two, but did not discuss them in combination.  Then, at step three, the ALJ explained how none of Morse's three severe impairments individually met or equaled the severity of a listed impairment, but did not address the combination of those three impairments or even mention Morse's non-severe impairments.  And, like the ALJ in Forni, the ALJ in this case said nothing at all about Morse's non-severe impairments in his discussion of Morse's RFC. In sum, the most that can be said about the ALJ's consideration of Morse's impairments in combination is that he explained why Morse's severe impairment of obesity did not result in any limitations beyond those resulting from his severe impairments of degenerative disc disease and diabetes.  Moreover, while the ALJ's RFC assessment includes an assessment of the credibility of Morse's statements about the symptoms of his severe impairments, that discussion does not mention Morse's statements about: (1) symptoms resulting from sleep apnea such as daytime sleepiness, see Tr. 44; (2) symptoms resulting from depression,

18

such as loss of concentration, see Tr. 50; or (3) symptoms
resulting from panic disorder, see Tr. 51-52.

Finally, the ALJ's discussion of the weight he assigned to
expert opinions, which concludes his RFC assessment, refers only
to the opinions concerning Morse's physical condition.  The ALJ
weighed the opinions of the mental-health experts earlier in the
opinion, in conjunction with his determination that Morse's
mental impairments were not severe.  That, in turn, supports an
inference that the ALJ believed that opinions on Morse's non-
severe mental impairments were irrelevant to his analysis beyond
step two.  This inference is strengthened by the ALJ's failure
to mention those impairments in either his discussion of step
three or his RFC assessment.

Based upon the foregoing, it is difficult to escape the
conclusion that the ALJ in this case, like the ALJ in Forni,
completely dropped Morse's non-severe impairment from his
analysis at step two.  Thus, the only question that remains is
whether this court should adopt the standard Judge Barbadoro
applied in Forni or adopt the standard from Tanner and
Tuggerson-Brown.  Judge Barbadoro's is the better approach.

In Browning v. Colvin, Judge Posner referred to a phrase
from the ALJ's credibility assessment as "a pernicious bit of
boilerplate to which the Social Security Administration

nevertheless clings," 766 F.3d 702, 707 (7th Cir. 2014) (citing Goins v. Colvin, 764 F.3d 677, 681 (7th Cir. 2014)).  While the issue here is not the ALJ's credibility assessment, the court is concerned that by adopting the standard from Tanner and Tuggerson-Brown, an ALJ could meet his or her responsibility under 20 C.F.R. §§ 404.1523 & 416.923 by doing nothing more than reciting boilerplate assertions that he or she considered a claimant's impairments in combination without describing any actual analysis.  As a practical matter, if the court were to apply Tanner and Tuggerson-Brown, the ALJ would be allowed to meet his responsibility under §§ 404.1523 & 416.923 by providing less analysis on the rather complex issue of impairments in combination than he provided when explaining his determinations that several of Morse's impairments, individually, were not severe.  Judge Barbadoro's standard avoids that counter-intuitive result.

In addition, while Tanner appears to apply a very relaxed definition of "adequate explanation," which allows conclusory statements to stand in for analysis, one of the cases the Tanner court cited in its opinion describes the adequate-explanation requirement in terms that are similar to the rule Judge Barbadoro applied in Forni:

The ALJ found that although claimant suffered from
numerous ailments, he did not have an impairment or
combination of impairments listed in, or medically
equal to, one listed in Appendix 1, Subpart P, Reg.
No. 4.  This finding in itself, however, is not
sufficient to foreclose disability.  Congress
explicitly requires that "the combined effect of all
the individual's impairments" be considered, "without
regard to whether any such impairment if considered
separately" would be sufficiently severe, 42 U.S.C. §
423(d)(2)(c), Hines v. Bowen, 872 F.2d 56, 59 (4th
Cir. 1989).  Therefore, a failure to establish
disability under the listings by reference to a
single, separate impairment does not prevent a
disability award.

    After finding that claimant failed to meet a
listing, the ALJ went on to discuss each of claimant's
impairments but failed to analyze the cumulative
effect the impairments had on the claimant's ability
to work.  . . .  It is axiomatic that disability may
result from a number of impairments which, taken
separately, might not be disabling, but whose total
effect, taken together, is to render claimant unable
to engage in substantial gainful activity.  In
recognizing this principle, this Court has on numerous
occasions held that in evaluating the effect[s] of
various impairments upon a disability benefit
claimant, the Secretary must consider the combined
effect of a claimant's impairments and not fragmentize
them.  . . .

    As a corollary to this rule, the ALJ must
adequately explain his or her evaluation of the
combined effects of the impairments.

Walker, 889 F.2d at 49-50 (4th Cir. 1989) (emphasis added).

Plainly, according to the Walker court, adequate explanation

consists of analysis, not just conclusory findings.  Walker, in

turn, cites Reichenbach v. Heckler, which remanded a case

because the ALJ "failed to provide adequate explanation to show

that he had considered the combined effect of the impairments <u>so
as to allow proper judicial review</u>," 808 F.2d 309, 312 (4th Cir.
1985) (emphasis added).  It is difficult to see how the mere
recitation of boilerplate phrases, which is acceptable under
Tanner, allows proper judicial review.  In sum, as between the
approaches employed in Tanner and Forni, Judge Barbadoro's is
the better one, and this court adopts it.

Because the ALJ's discussion of Morse's impairments in
combination falls short of the standard articulated in Forni,
the ALJ's decision is not supported by substantial evidence.
<u>See</u> 2006 WL 2956293, at *9.  Consequently, this case must be
remanded, <u>see</u> <u>id.</u>, for a further evaluation of all of Morse's
impairments, in combination, at step two of the sequential
evaluation process, and beyond.

While the court need say no more, it offers the following
observation, which may be useful on remand.  As the court has
already noted, Morse argues that the ALJ erred at the RFC stage
by failing to evaluate the credibility of statements he made
about the effects of three of his non-severe impairments:
depression, anxiety, and sleep apnea.  The Acting Commissioner
does not appear to address that argument directly.  But, in her
argument that the ALJ properly considered the combined effects
of Morse's impairments, she states that "[t]he ALJ recognized

that Plaintiff alleged that his impairments resulted in fatigue, dizziness, and an inability to complete tasks, beyond the physically limiting effects of the conditions."  Resp't's Mem. of Law (doc. no. 16-1) 12.  In support of that argument, the Acting Commissioner cites the following passage from the ALJ's decision:

> He states his obesity results in fatigue.  The claimant testifies that his blood sugars fluctuate, which causes him to get dizzy and use the bathroom frequently.  The claimant alleges that his impairments inhibit his ability to complete tasks such that he is disabled.

Tr. 25 (citations to the record omitted).  Because the symptoms of fatigue and dizziness are clearly linked to two of Morse's severe impairments, and the symptom related to task completion is not linked to any particular impairment, those statements in the ALJ's decision do not demonstrate that he considered any of the symptoms that Morse attributed to his non-severe impairments, such as sleepiness resulting from sleep apnea, see Tr. 44, loss of concentration resulting from depression, see Tr. 50, and various symptoms resulting from panic disorder, see Tr. 51-52.  Accordingly, on remand, the ALJ should consider the full range of Morse's symptoms, not just those that are linked to his severe impairments.

23

**Conclusion**

For the reasons detailed above, the Acting Commissioner's motion for an order affirming her decision, document no. 16, is denied, and Morse's motion to reverse the decision of the Acting Commissioner, document no. 14, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 17, 2015

cc:   Janine Gawryl, Esq.
      Robert J. Rabuck, Esq.